UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:

JOHN ROBERT LYNCH,                         Case no: 12-61025
                                                                Chapter 7
      Debtor.                                         Hon. Walter Shapero
_____/

MARIAN TANKERSLEY; and RICHARD DIEHL,

      Plaintiffs,                                    Adv. Proc. 13-04456

v.

JOHN ROBERT LYNCH,

      Defendant.
_____/

## OPINION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

The plaintiffs, as franchisees, arbitrated a dispute with the franchisor corporation and obtained judgment against it. The plaintiffs then filed this adversary proceeding against an officer of the franchisor corporation, who is the debtor in this case, alleging (a) he is jointly and severally liable on the franchisor corporation's judgment debt and (b) because that debt stems from fraud, it is nondischargeable under 11 U.S.C. § 523(a)(2)(A). The debtor-defendant filed a motion for summary judgment based on defensive collateral estoppel, arguing that the prior arbitration made specific findings that preclude his personal liability on any claims of fraud. The motion is denied.

<u>Background</u>

Marian Tankersley and Richard Diehl ("Plaintiffs") purchased from and became a franchisee of Collision On Wheels International, LLC ("CoW"), a mobile auto body repair business. After operating the business for some time in their home state of California, Plaintiffs' business soured, prompting them to sue CoW in California state court for alleged fraud, misrepresentations, and violations of franchise law. Pursuant to the franchise agreement, the dispute between Plaintiffs and CoW was arbitrated in Michigan, applying Michigan law. After two weeks of proceedings, Plaintiffs prevailed on several counts. The Arbitrator issued an Interim Award, which detailed his factual findings, legal conclusions, and an award of damages. The Arbitrator later issued a Final Award that specified a further award to Plaintiffs of attorney's fees and costs. Plaintiffs filed suit in the U.S. District Court for the Eastern District of Michigan, on the basis of diversity jurisdiction, to enforce the arbitration awards against CoW and they obtained judgment by default for approximately $566,820.21. CoW is also presently a Chapter 7 debtor in this Court.

Plaintiffs had also sued five of CoW's corporate officers ("Officers"), among them Debtor John Robert Lynch ("Lynch" or "Debtor"), in California state court based on similar allegations. Plaintiffs were unsuccessful in attempting to bring their claims against the Officers as part of the Arbitration because the franchise agreement apparently only required arbitration for claims against CoW, but not claims against the Officers. This separate suit, which eventually ended up in the U.S. District Court for the Eastern District of Michigan, was stayed while the Arbitration against CoW proceeded. When it resumed, the District Court denied cross motions for summary judgment by Plaintiffs and the Officers, opining, among other things, that the Arbitrator's

findings did not entitle the defendant Officers to summary judgment on the basis of defensive collateral estoppel.

Defensive collateral estoppel is defined as "when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against the same or a different party." U.S. v. Mendoza, 464 U.S. 154, 158-59 n.4 (1984) (citation omitted). As noted, after Lynch filed this individual bankruptcy, Plaintiffs filed this adversary proceeding, contending that he should be held personally liable for a debt that is based on false pretenses, false representation, or actual fraud, and that such debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A). Lynch moved for summary judgment arguing that, at this juncture and as a matter of law, the Arbitrator's findings constitute a basis for defensive collateral estoppel.

### DISCUSSION

*Summary Judgment Standard*

Fed.R.Civ.P. 56 provides the statutory basis for summary judgment, and is made applicable to adversary proceedings via Fed.R.Bankr.P. 7056. "Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." Kalamazoo River Study Group v. Rockwell Intern. Corp., 171 F.3d 1065, 1068 (6th Cir. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis original). "There is no genuine issue of material fact

when 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Williams v. Leatherwood, 258 Fed. Appx. 817, 820 (6th Cir. 2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

*Nondischargeability Standard*

Under § 523 (a)(2)(A), a debtor is not discharged from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" Because this statute is phrased in the disjunctive, it contains three separate (albeit nuanced) grounds for nondischargeability. Rakich v. Jagiello, 2013 WL 4068166, *5, 8 (Bankr. E.D. Mich. 2013) (citations omitted). "'False pretenses' for purposes of Section 523(a)(2)(A) then may be defined as conscious deceptive or misleading conduct calculated to obtain, or deprive another of, property. It is the practice of any scam, scheme, subterfuge, artifice, deceit or chicane in the accomplishment of an unlawful objective." Id. at *14-15 (quoting In re Kovler, 249 B.R. 238, 261 (Bankr. S.D. N.Y. 2000)). False representation requires proof that:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

In re Grenier, 458 Fed. Appx. 436, 438 (6th Cir. 2012) (quoting In re Rembert, 141 F.3d 277, 280-81 (6th Cir. 1998)). Actual fraud, which is broader than misrepresentation, encompasses any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another. In re Hermoyian, 466 B.R. 348, 379-380 (Bankr. E.D. Mich. 2012) (quoting In re Vitanovich, 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001)). "[T]he standard of

proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard." Grogan v. Garner, 498 U.S. 279, 291 (1991).

*Collateral Estoppel Standard*

"Principles of collateral estoppel apply in non-dischargeability actions." Livingston v. Transnation Title Insurance Co. (In re Livingston), 372 Fed. Appx. 613, 617 (6th Cir. 2010). There may be some disagreement or lack of clarity as to whether this Court should apply Michigan collateral estoppel principles or federal collateral estoppel principles. The Court concludes the two are substantively identical and, more importantly, if there is a difference, the choice does not affect the result in this case in any event. Under the federal standard, collateral estoppel applies to a prior decision if:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

Gardner v. United States, 443 Fed. Appx. 70, 74 (6th Cir. 2011) (quoting Smith v. SEC, 129 F.3d 356, 362 (6th Cir. 1997)). Defensive collateral estoppel does not require mutuality between the parties as long as the plaintiff had a full and fair opportunity to litigate the contested issue in the prior proceeding. Georgia-P. Consumer Products LP v. Four-U-Packaging, Inc., 701 F.3d 1093, 1098-99 (6th Cir. 2012). Under the Michigan standard, collateral estoppel applies to a prior decision if "(1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) the same parties had a full and fair opportunity to litigate the issue, and (3) there was mutuality of estoppel." People v. Trakhtenberg, 493 Mich. 38, 48 (2012) (quoting Estes v. Titus, 481 Mich. 573, 585 (2008)). "[T]he lack of mutuality of estoppel should not preclude the use of collateral estoppel when it is asserted defensively to prevent a party from

relitigating an issue that such party has already had a full and fair opportunity to litigate in a prior suit." Monat v. State Farm Ins. Co., 469 Mich. 679, 691-92 (2004).

*The Arbitrator's Findings*

Plaintiffs and CoW exercised their option to request that the Arbitrator issue an award specifying detailed findings of fact and law. Interim Award at 3. Plaintiffs' allegations fell into two categories: (a) that CoW violated the Michigan Franchise Investment Law (MFIL), Mich. Comp. Laws Ann. § 445.1501 *et seq.*; and (b) that CoW committed common law fraud.[1] Section 31 of the MFIL provides for damages against a corporation who offers or sells a franchise in violation of § 5 (prohibited acts) or § 8 (disclosure requirements) and § 32 provides for joint and several liability for certain corporate officers and agents.

First, Plaintiffs alleged that CoW disclosed information and spreadsheets beyond the scope and procedure allowed by § 8. The Arbitrator found that CoW committed this violation and that such was at least in part attributable to "agent(s)" of CoW. Interim Award at 6. One Officer of CoW was referred to by name, but Lynch was not. Id. Second, Plaintiffs alleged that CoW violated §§ 5 and 8 by failing to disclose material differences between the franchise that Plaintiffs purchased and the predecessor business upon which it was based. Section 5 states:

> A person shall not, in connection with the filing, offer, sale, or purchase of any franchise, directly or indirectly:
>
> (a) Employ any device, scheme, or artifice to defraud.
>
> (b) Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

---

[1] This opinion refers to the MFIL sections by their commonly-used section numbers. For example, Mich. Comp. Laws Ann. § 445.1508 is referred to as § 8.

(c) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

The Arbitrator found that Plaintiffs alleged only a violation of § 5(b), which does not sound in fraud, and limited his decision accordingly.[2] Interim Award at 14. The Arbitrator found such a violation, incident to which he necessarily determined that Plaintiffs reasonably relied on CoW's representations. Id. at 15. Third, the Arbitrator found CoW violated the MFIL by failing to disclose to Plaintiffs applicable California environmental regulations, finding that although CoW was not itself aware of such regulations, it nonetheless had an affirmative duty under § 8 to disclose such to Plaintiffs. Id. at 11-12. Finally, as to Plaintiffs' claim that CoW engaged in common law fraud, the Arbitrator denied relief, finding that CoW did not itself know of the inaccurate representations, essentially finding that although CoW made misrepresentations, it did not make them fraudulently. Id. at 20.

*Whether Lynch Can Employ Defensive Collateral Estoppel Based on the Arbitrator's Findings*

Lynch's collateral estoppel argument arises from the Arbitrator's awards, which, as noted, resulted in a federal court monetary judgment against CoW. While Lynch originally contended that the District Court's opinion (denying Plaintiffs' and the Officers' cross motions for summary judgment) is also entitled to collateral estoppel effect, he later abandoned that argument by conceding that such was not a final order. See Harrison v. Ash, 539 F.3d 510, 521

---

[2] Although recognizing that subsections (a) and (c), which do appear to sound in fraud, were not pled by Plaintiffs, the Arbitrator further noted:

> In the event that subsections (a) and (c) are considered to be at issue, it is further found that such provisions of [CoW's] UFOC was not done in violation of those subsections, the Arbitrator finding that there is insufficient evidence of guilty knowledge or fraudulent or deceptive intent on the part of [CoW] in making this erroneous representation to warrant an adverse finding against [CoW] under those subsections. It was simply wrong in its belief, and thus in its assertion[.]

Interim Award at 15. In light of the Arbitrator's statement that subsections (a) and (c) were not pled, the Court finds the above-quoted language to be unessential to the Arbitrator's findings.

(6th Cir. 2008). Lynch appears to still imply that the District Court's opinion reinforces or confirms the Arbitrator's findings. Respectfully, this Court deems it unnecessary to further discuss the District Court's opinion because it is the Arbitrator's findings that are relevant to and dispositive of Lynch's motion.

Lynch stresses that the Arbitrator explicitly found that CoW did not commit common law fraud. Lynch construes and applies this finding as a shield to the allegation that he is personally liable for any fraudulent conduct because CoW necessarily acted though officers such as himself. Barclae v. Zarb, 300 Mich. App. 455, 472 (2013) ("a corporation may only act through its officers and agents"). In other words, Lynch argues that because the Arbitrator found that CoW had no knowledge of the falsity of the representations (which is a necessary element for a fraud claim), and because a corporation can only acquire or possess knowledge though its officers or agents, the necessary conclusion is that the Officers themselves had no such knowledge, and that conclusion insulates Lynch from any claim of fraud.

Lynch and Plaintiffs agree that the elements of collateral estoppel are met except for one significant issue: Plaintiffs argue that the Arbitrator's findings should not be granted defensive collateral estoppel effect because the fraud claim at the Arbitration was, pursuant to Michigan law, governed by the "clear and convincing evidence" standard, while the present nondischargeability action is, as previously noted, governed by the lower "preponderance of the evidence standard." [3] Although the Interim Award is silent on what burdens of proof were

---

[3] Michigan's standard for common law fraud is:

> (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a

applied to any of the claims, the parties assume (as does the Court) that the Arbitrator applied the correct clear and convincing evidence standard to the common law fraud claim.

Plaintiffs rely primarily on S.L. Pierce Agency, Inc. v. Painter (In re Painter), 285 B.R. 669 (Bankr. S.D. Ohio 2002) in which the bankruptcy court was asked to apply defensive collateral estoppel effect to a state court determination that Painter, a defendant there, did not act willfully and maliciously. Because applicable state law required the "willful and malicious" element to be proven by clear and convincing evidence, but the subsequent nondischargeability action required it to be proven only by a preponderance, the bankruptcy court held that "[f]ailure by the Plaintiff to meet the heightened 'clear and convincing' evidence standard, does not equate to mean that the evidence also failed to meet the lesser burden of proof under 11 U.S.C. § 523(a)(6)." Id. at 676.

Lynch agrees that the differing burdens of proof have some relevance here, but argues that Painter is distinguishable because the Arbitrator here engaged in a lengthy factual inquiry and made necessary and specific findings, not just bare legal conclusions. Lynch relies on Marlene Industries Corp. v. N.L.R.B., 712 F.2d 1011 (6th Cir. 1983). In that case, a special master applying the clear and convincing standard found that, contrary to the allegations by the National Labor Relations Board (NLRB), defendant Marlene was not in contempt of a prior enforcement order because Marlene did not engage in unfair labor practices. The special master made particularized findings of fact and conclusions of law regarding Marlene's conduct. Subsequently, the NLRB brought another action against Marlene for unfair labor practices based

---

recovery. The burden of proof rests with plaintiffs. *Fraud will not be presumed but must be proven by clear, satisfactory and convincing evidence.*

Hi-Way Motor Co. v. Intl. Harvester Co., 398 Mich. 330, 336 (1976) (emphasis added) (internal citations and quotation marks omitted).

upon the same factual occurrence, but that was governed by the lower preponderance of the evidence standard. Marlene asserted defensive collateral estoppel based on the special master's finding that it did not engage in unfair labor practices. The Sixth Circuit Court of Appeals found that, despite the differing burdens of proof, the special master's ruling was preclusive of that issue, and in doing so it opined:

> In the alternative, the Board contends that the prior contempt proceeding did not preclude relitigation of the issue of unfair labor practices because the party against whom preclusion was sought (i.e., NLRB) had a significantly heavier burden of persuasion with respect to the contested issue in the initial action (i.e., clear and convincing evidence), than it had in the subsequent action (i.e., preponderance of the evidence). There is case law both supporting and opposing the Board's proposition as framed. At a minimum, it can be said that the vast majority of courts recognize that a difference in burden of proof is a factor which should be considered in applying the doctrine of collateral estoppel. Restat[e]ment (Second) of Judgments § 28(4) (1982). The question before us, however, is not the question framed by the Board.
>
> Had the Special Master been free to conclude in a general-verdict-like fashion that the Board had failed to prove unfair labor practices by clear and convincing evidence, then the Board could now be heard to argue that it should not be precluded from attempting to prove its claim under the less stringent "preponderance of the evidence" standard. There would be merit to the argument that adverse disposition in the former action does not preclude favorable disposition in the latter. The Board, however, failed to distinguish between the findings of fact in the earlier proceeding and the ultimate question whether Marlene was guilty of contempt. The Special Master in the contempt proceeding was required to make particularized findings of fact and conclusions of law. He did more than merely conclude that the Board had failed to prove contempt by clear and convincing evidence. He expressly found that Marlene had not engaged in unfair labor practices with respect to Rushing and the employees who struck in response to Rushing's discharge. Such findings dispose of the issue of whether Marlene had engaged in unfair labor practices and, therefore, preclude relitigation. Any contention that is necessarily inconsistent with this prior adjudication of a material and litigated issue is subsumed in that issue and precluded by the prior judgment. To the extent the Board's success in a subsequent unfair labor practice action would be contingent upon contrary disposition of the facts found by the Special Master, such an action is precluded.
>
> We are mindful of the admonishment that "[n]either collateral estoppel nor res judicata is rigidly applied. Both rules are qualified or rejected when their application would contravene an overriding public policy or result in manifest

> injustice." Bronson, 525 F.2d at 344 [(6th Cir. 1975)], citing, Tipler v. E.I. duPont deNemours and Co., 443 F.2d 125, 128 (6th Cir.1971). We do not find, however, any special circumstances surrounding the case at bar which would justify affording the Board an opportunity to relitigate the issue. The Board has had a full and fair opportunity to litigate the issue in the forum of its choice, the contempt proceeding. Moreover, the forum in this second action did not afford the Board any procedural opportunities in the presentation and determination of the issues which were not available in the first forum. The Board is thus precluded from asserting in this unfair labor practice proceeding any allegation inconsistent with the issues of fact determined by the Special Master in the prior contempt proceeding.

Id. at 1016-17 (internal citation omitted). Lynch argues that, because the Arbitrator went beyond merely concluding that Plaintiffs failed to prove fraud, but instead made lengthy and particularized findings absolving CoW from any alleged knowledge (and thus from any alleged fraud), Plaintiffs are barred from litigating the issue of Lynch's complicity in any such fraud stemming from the same facts.

It is accepted, for example, that "the difference in the burden of proof in criminal and civil cases precludes application of the doctrine of collateral estoppel." One Lot Emerald Cut Stones and One Ring v. U.S., 409 U.S. 232, 235 (1972). Subsequent to Marlene, the Supreme Court stated that "[a] creditor who successfully obtained a fraud judgment in a jurisdiction that requires proof of fraud by clear and convincing evidence would, however, be indifferent to the burden of proof regarding nondischargeability, because he could invoke collateral estoppel in any event." Grogan v. Garner, 498 U.S. 279, 285 (1991). It further specified in a footnote: "This indifference would not be shared, however, by a creditor who either did not try, or tried *unsuccessfully*, to prove fraud in a jurisdiction requiring clear and convincing evidence but who nonetheless established a valid claim by proving, for example, a breach of contract involving the same transaction." Id. n.12 (citations omitted) (emphasis original). Although this is dictum, it is

relevant to the present case because Plaintiffs unsuccessfully tried to prove fraud, but proved their MFIL allegations.

The Arbitrator's findings did not unequivocally state that CoW was wholly innocent of fraud. As to an aspect of the alleged fraud, the Arbitrator stated that "the record does not support findings" as to CoW's knowledge of the falsity of certain representations. Interim Award at 20. That sounds akin to the "general-verdict" referenced in Marlene and seems to allow for the possibility that, while Plaintiffs fell short of their clear and convincing evidence burden, they could very well prevail under a lower burden. 712 F.2d at 1016. In contrast, as to the aspect of alleged fraud relating to nondisclosure of the environmental regulations, the Arbitrator found "there is no evidence" of CoW's knowledge. Interim Award at 20. Regardless of whether or not the Arbitrator's choice of language is deemed deliberate, it can be inferred that there exists at least some evidence weighing in favor of CoW's liability on the alleged fraud, at least with respect to some of Plaintiffs' allegations.

As noted, mutuality of parties is not required to assert defensive collateral estoppel, provided that the party against whom collateral estoppel is being asserted had a full and fair opportunity to litigate. Plaintiffs' ability and incentive to prove Lynch's liability at the Arbitration is thus dispositive. The issues raised at the Arbitration pertaining to CoW's knowledge and intent necessarily depended on the knowledge and intent of some (but not necessarily all) of its Officers, including Lynch. However, the present record (including whatever documents the Court was asked to take judicial notice of) is devoid of any evidence as to what opportunities Plaintiffs had to prove Lynch's liability by way of testimony, affidavit, or otherwise. Lynch now makes no argument that he was subjected to any particular inquiry by Plaintiffs at the Arbitration, whether relating to his capacity as an officer or as an individual. It is

true that such an inquiry would have been relevant to the Arbitration claims against CoW and that such gave Plaintiffs at least some incentive to pursue it. Proving that Lynch committed fraud could have sufficed to prove that CoW did as well. However, it cannot be said that Plaintiffs had a full and fair opportunity to litigate these issues against Lynch (or for that matter, against the four other Officers, or against any number of other agents who may have acted on behalf of CoW). The scope of the already lengthy Arbitration was limited to claims against CoW and there existed a separate pending lawsuit against the Officers, including Lynch. To conclude that Plaintiffs had at the Arbitration a "full and fair" opportunity to litigate the whole array of issues against both CoW and the Officers would be to stretch the definitions of those terms. The Court finds that whatever opportunity or incentive Plaintiffs had to pursue such claims against Lynch at the Arbitration were not sufficient to meet the above-noted requirements of collateral estoppel.

Further, the Court finds this matter within the "special circumstances" described in Marlene. 712 F.2d at 1017. First, in Marlene, the party against whom defensive collateral estoppel was being asserted, the NLRB, had a far more advantageous position in pursuing the initial action, including choosing the forum. Id. In the present case, however, Plaintiffs had no such choice because they were obligated (a) to submit to Arbitration; (b) to arbitrate in Michigan, applying Michigan law; and (c) to arbitrate against CoW only, not the Officers. Plaintiffs now have access to what the Marlene court described as "procedural opportunities in the presentation and determination of the issues which were not available in the first forum," i.e. that Plaintiffs are now able to pursue Lynch as a named party and with the focus being on Lynch's conduct. Id.

This Court also finds Painter to be persuasive because the plaintiff in Painter arguably had a fuller and fairer opportunity to litigate the subject issue compared to the Plaintiffs here. Painter was actually a named defendant in the initial action, whereas here, Lynch was not (and arguably,

Lynch's participation in and relevance to the Arbitration could have been marginal). The Court is not persuaded by Lynch's attempts to distinguish <u>Painter</u> on the grounds that the Arbitration here contains more specific findings than the initial state court proceedings in <u>Painter</u>. Like this Court, the <u>Painter</u> court reviewed only the prior written opinion because it was not presented with transcripts or evidence from the prior proceeding. 285 B.R. at 675. Although this Court cannot predict whether that would have made a difference to the <u>Painter</u> court, given the posture of the present case, Lynch's failure to demonstrate that the Plaintiffs had a full and fair opportunity to litigate must be construed against Lynch, who is the moving party and bears the burden of proof.

The Court is not persuaded by Lynch's argument that Plaintiffs' position would severely undermine the doctrine of collateral estoppel. This opinion relates to existing requirements for the use of collateral estoppel and, to some extent, is particular to the present facts. Insofar as the parties may have argued the admissibility of any documents at trial (as opposed to in connection with this motion), the Court makes no ruling because such arguments are better raised by other appropriate procedures.

## CONCLUSION

The Court finds that Lynch has not met his summary judgment burden and, for the foregoing reasons, Lynch's motion is denied in its entirety. The Court will be contemporaneously entering an appropriate order and issuing a scheduling order.

**Signed on March 07, 2014**

                                                **/s/ Walter Shapero**
                                     **Walter Shapero**
                                     **United States Bankruptcy Judge**